HUNTER v. ALDRICH ET AL.

1. **Partnership:** SETTLEMENT: IMPEACHMENT OF. Where there has
   been an accounting between partners, and neither fraud nor mistake
   affecting the whole account as stated is shown, such account will be
   deemed correct except as to such specific items as can be shown to be
   erroneous by the party seeking to impeach the settlement.

2. ———: EVIDENCE: BOOKS OF ACCOUNT. Facts considered and held to
   render the books of account of a partnership admissible in evidence in
   an action between the partners.

*Appeal from Cass Circuit Court.*

FRIDAY, DECEMBER 5.

*Phelps & DeLano* and *John W. Scott*, for Aldrich.

*John M. & R. W. Griggs* and *H. G. Curtis*, for plaintiff
and James Hunter.

SEEVERS, J.—The plaintiff brought an action against Aldrich
to recover money loaned. Aldrich answered the petition and
stated that previous to July, 1875, the plaintiff, Aldrich and
James Hunter were partners, and that the money to recover
which the action was brought belonged to the partnership, and
that the plaintiff had credit therefor on the books of the partner-
ship. There was also a general denial, and an allegation that
in July, 1875, the plaintiff had retired from the partnership.
Upon such issues the cause was submitted to a jury, who,
failing to agree, were discharged. Afterward Aldrich, with
leave of the court, filed an amendment to his answer and a
cross-petition in equity, in which it was stated that about
April, 1875, the said partnership was formed, and that the
same continued until August thereafter. The terms of the
partnership were stated, and that the plaintiff had received a
large amount of partnership funds for which he refused to
account. It was asked that James Hunter be made a party,
an accounting had of said partnership, and that said Aldrich
recover a judgment against plaintiff. James Hunter appeared
and answered the cross-petition, and admitted the existence of

the partnership, but stated that it was dissolved in July, 1875, by the plaintiff retiring therefrom, and that in August thereafter there was a settlement of all partnership matters, so far as the plaintiff was concerned, between him and the other members of the firm; that the interest of the plaintiff in the partnership was ascertained and the same paid to him; that afterward the business was continued by Aldrich and said James Hunter until February, 1876, when he retired. An accounting between Aldrich and James Hunter was asked.

The plaintiff also answered the cross-petition and insisted there was a settlement of said partnership as to him, in August, 1875, and that he had received a certain amount of money as his share, which he had afterward loaned Aldrich; that in February, 1876, he purchased the interest of James Hunter in said partnership, and he also asks an accounting.

The defendant Aldrich amended his cross-petition, and among other things stated that if it should appear there had been a settlement of said partnership it was not his voluntary act, and that the same had been obtained by fraud, and was incorrect. Upon said issues the cause was tried as an action in equity, and it is triable anew in this court. A judgment was rendered in favor of the plaintiff against Aldrich, and in favor of the latter against James Hunter. All the parties appeal.

I. Was there a settlement, as claimed by the Hunters, is the first question to which we turn our attention. The defendant testifies there was not. On the other hand, John and James Hunter, David Workman, Samuel Hunter, Ida Hunter and James Burton, testify there was—some of them positively, and others to facts which strongly so tend, and which are inconsistent with the theory of Aldrich and contradictory to his evidence. The preponderance of the evidence is, therefore, with the plaintiff, that there was a settlement, and that he loaned the money to Aldrich, as stated in his petition.

1. PARTNERSHIP: settlement: impeachment of.

There is no evidence tending to show that such settlement was not the voluntary act of Aldrich, or that it was obtained by fraud. Nor is there evidence tending to show that any

particular item was omitted by mistake, or that anything was included therein which should not have been. The attempt, however, is made to show that a wrong result was reached by showing the amount of the gross receipts, the net profits and the amounts received and paid out as expenses by each partner. Where there has been an accounting between partners, the rule is, when neither fraud nor mistake has been shown which affects the whole account, " but the correctness of some of the items in it, nevertheless, disputed, the account already stated will not be treated as non-existing, but will be acted upon as correct, save so far as the party dissatisfied with any item can show it to be erroneous." "If a settled account is impeached for errors, particular errors must be stated and proved." 1 Collyer's Law of Partnership, 461, 462.

No attempt was made to show what matters had been included in the settlement. No particular error therein was established. We do not, therefore, think the settlement should be disturbed, although we incline to think, from the evidence before us, a wrong result was probably reached. Our reasons, briefly stated, are these: The evidence as to many of the items is contradictory, and their correctness as charges or credits to either party must be determined as we may believe the evidence preponderates. The books of the partnership were not kept as well as they ought to have been. Each partner was in the habit of making memoranda of receipts and expenses received and paid by him, which were afterward reported and entered on the books. Nor does the latter · in all instances state by whom the payments entered thereon had been made. This had to be shown by the testimony of the parties. The partnership had been in existence only about four months at the time the settlement was made. All matters entering into the settlement were, therefore, comparatively fresh and must have been within the recollection of all, or at least this is most likely true. The parties were friendly at the time. No bad blood had been engendered, nor had their recollection of events in the then recent past become warped because of the antagonism which is the natural result of the subsequent litigation.

II. There in no dispute as to the amount of the earnings and amount received by each partner during the existence of the partnership between Aldrich and James Hunter, and after the settlement with the plaintiff.

The earnings amounted to....................$2,936.24

Aldrich, in the first instance, received........$2,352.24
Hunter........................................  584.00
                                              ----------
                                              $2,936.24

The former was to receive two, and the latter one-third of the profits. The dispute is as to the amount paid Hunter by Aldrich in addition to the above, and the amount paid by each as expenses.

We have examined the disputed items and the evidence relating thereto, and believe the preponderance of the evidence is with Aldrich. We place some reliance on the books. The entries were made therein by Aldrich, near the time of the several transactions, and we fail to discover any evidence at the time the entries were made of an intent on the part of Aldrich to cheat or wrong Hunter. The latter had the opportunity, and, no doubt, did examine the books from time to time. The parties were then friendly. There was no friction of any character or description between them. No books were kept by Hunter, nor did he testify from any memoranda, but relied wholly on his recollection, and, as to some of the disputed items, his only denial is that he does not recollect. Aldrich is more positive and he has the books to support him. The evidence of other parties is about equally balanced. That is, it aids one about as much as it does the other.

It is urged the books are not admissible, but we think otherwise. They are the only books of account kept by the partnership. Hunter knew they were kept and he either saw them or had the opportunity of doing so. He, therefore, should have seen they were correctly kept, and both parties are bound thereby, unless they have been shown to be incorrect or there is evidence that some particular item is wrong.

2. ———: evidence: books of account.

It is further insisted that some of the charges and credits are double, but this is a mere inference, there is no evidence to support it.

Considering the whole evidence, we find James Hunter was indebted to Aldrich in the sum of $295.14 at the time he sold out to John Hunter in February, 1876. Interest thereon, up to the time the judgment below was rendered, will make the amount due Aldrich from James Hunter slightly greater than the amount of said judgment. But as Aldrich has not appealed therefrom it cannot be enlarged.

Counsel for Hunter insist that he is entitled to judgment against Aldrich because there were several hundred dollars due him at the time the settlement was made with John Hunter. If this be so, it was not Aldrich who was so indebted, but the partnership.

Now James Hunter insists, in his pleadings and evidence, that such settlement was made, and we have so found. We are unable to say, from the evidence, that Aldrich is indebted to James Hunter, but the partnership may be. The latter, however, cannot recover from Aldrich the amount due from the partnership. John Hunter may, by the settlement, have gotten more than he was entitled to. But, as between Aldrich and the partnership, he has not got more than his share of the profits. Why, therefore, should he account to James Hunter for anything, when the latter and Aldrich are debarred by the settlement from having another accounting, and thereby make the plaintiff contribute to the payment of something to James Hunter? We must not be understood as saying in positive terms that the plaintiff got, by the settlement, more than he was entitled to, but that, if he did or did not, James Hunter cannot recover of Aldrich anything, by reason of what may be termed the first partnership, because Aldrich has not, as we view the evidence, received more than he was entitled to.

III. What has been said as to the partnership books, other evidence, and the weight to be given thereto, applies with full force to the third partnership—that between Aldrich and the plaintiff.

Hunter v. Aldrich.

Counsel for the former insist they have established that the plaintiff is indebted to Aldrich in about the sum of $82, the same being the amount received by him more than his share of the net proceeds of the third partnership. The court below, on the whole case, gave the plaintiff a judgment against Aldrich for $485.80. The plaintiff is entitled to interest on the money loaned, which, up to the date of the decree, would amount to about $90. Excluding the amount returned, the loan amounted to $460.80. There must have been, therefore, only $25.25 allowed as interest.

Now in no event, under the evidence, should the judgment against Aldrich be reduced by reason of the plaintiff having received more than his share of the profits of the third partnership.

The plaintiff claims that he is entitled to a judgment against Aldrich for about $73, excluding $55 received on the money loaned, the same being the excess of profits received by Aldrich of the third partnership. It is sufficient to say that we are satisfied the judgment below is fully as much as the plaintiff is entitled to recover. It would serve no useful purpose to state our reasons at length. To do so satisfactorily, we should have to discuss the evidence in relation to the disputed items of the account. This would extend this opinion to an unwarrantable length.

The result is that the judgments below are affirmed, and each party must pay one-third of the costs in this court.

AFFIRMED.